# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DWAYNE COX,
  Plaintiff,

  v.               Case No. 10-C-0766

SGT. KEITH IMMERFALL,
CORRECTIONAL OFFICER BRADLEY, and
CORRECTIONAL OFFICER MIERZEJEWSKI,
  Defendants,

## ORDER

  Plaintiff, Dwayne Cox, who is incarcerated at Green Bay Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated while he was at Waupun Correctional Institution. He has paid the full filing fee.

  Regardless of plaintiff's fee status, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v.

Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## I. COMPLAINT AVERMENTS

Plaintiff was employed as a Tier Tender in the North Cell House at Waupun Correctional Institution (WCI) from August 25, 2006, to September 5, 2006. This was a janitorial job, and came with many perks. Plaintiff received a single cell assignment, was able to stay out of his cell, and he had a high rate of pay for a prison job.

On August 25, 2006, defendant Correctional Officer Bradley spontaneously conducted a strip search of plaintiff and a search of plaintiff's cell. When plaintiff asked why he was being strip searched, Bradley said it was "random." (Complaint at 2). The next day, Bradley asked plaintiff if he was still upset about being strip searched, and plaintiff said yes. Bradley told plaintiff that the strip search was ordered by defendant Correctional Officer Mierzejewski. Plaintiff concluded that the strip search was retaliatory because Mierzejewski constantly asked plaintiff to become a snitch, but plaintiff refused.

Mierzejewski came to plaintiff's cell on August 28, 2006, and told him that plaintiff was obligated to be a snitch because Mierzejewski had played a part in plaintiff receiving the tier tender job. Mierzejewski told plaintiff to tell him about certain prisoners' activities related to illegal drugs in the North Cell Hall. Plaintiff refused, and Mierzejewski told plaintiff to immediately "sign an inmate worker quit slip" and hand it in to the on duty sergeant. (Complaint at 3). Plaintiff refused to quit his job and said he would not be a snitch for prison staff. Mierzejewski told plaintiff "I'll get you!" and walked away.

2

(Complaint at 4). Plaintiff filed several inmate complaints and letters of grievance regarding the actions of Bradley and Mierzejewski.

On September 4, 2006, at approximately 8:15 p.m., defendant Sergeant Keith Immerfall opened plaintiff's cell door and instructed him to have a seat on the stairwell and he would be with him shortly. Two other prisoners were also summoned to the sergeant's desk for property reasons. Then Immerfall "directed plaintiff to approach his caged area at which time he told plaintiff, 'It's just you and I, no one else around' in a threatening manner." (Complaint at 5). The plaintiff describes the conversation that follows in his complaint:

> Plaintiff asked him what was on his mind. Immerfall replied that plaintiff's grievances about Bradley and Mierzewjewski's above-described actions towards plaintiff had brought a lot of "heat" on him and his officers. Immerfall further stated that he wasn't too thrilled by the conversation Tetzloff had with him regarding plaintiff's said complaints. He then stated that to make it easy on plaintiff he should just quit his tier tender job before the "situation gets too out of control." When plaintiff asked him what "situation" he was referring to he stated the above-described actions towards plaintiff by Bradley and Mierzewjewski. Plaintiff told Immerfall that he would not quit his job and that if Immerfall wanted him gone he would have to fire him. Immerfall threatened that he could easily set plaintiff up with a 360-day stay in punitive segregation, but he would let plaintiff decide how to leave. He told plaintiff that he would fabricate a Conduct Report (CR) against plaintiff for loitering and that Tetzloff would have plaintiff brought up front, and if so, plaintiff is to go along and agree with it. He further stated that if plaintiff did go along with it, plaintiff would not "be fucked with anymore and wouldn't have to go to the hole" (i.e., punitive segregation) for something that he didn't do. At this time it was approximately 8:30 p.m. when a lieutenant entered the NCH and Immerfall directed plaintiff to return to his cell, which he did. A few minutes later Immerfall stopped at plaintiff's cell and told him that he was making a "wise decision to accept being fired." He further stated that plaintiff would

3

> probably end up being summoned up front and questioned
> about the CR, and if he was summoned, to just agree to it.

(Complaint at 5-6). On September 5, 2006, plaintiff was removed from the general population and placed in temporary lockup (TLU) "pending investigation for violation of DOC 303.271 Lying about staff." (Complaint at 6).

Plaintiff received Conduct Report #1816644 on September 29, 2006. It was authored by Immerfall. A Captain Muraski told plaintiff in a chance meeting on September 29 that he found Immerfall's statements during the investigation to be "questionable and inconsistent with earlier statements given by him" and that he "doubted the validity" of Immerfall's statements against plaintiff. (Complaint at 6). Captain Muraski also told plaintiff that he found plaintiff's grievance against Immerfall to be "credible." Id. Plaintiff chose to proceed with a full due process hearing and requested that six questions be asked of Captain Muraski and that Captain Muraski's answers be submitted as evidence at the hearing. These questions and answers confirmed what Captain Muraski had told plaintiff on September 29. Captain J. O'Donovan, acting as hearing officer, found plaintiff not guilty and dismissed the charge on October 12, 2006.

Captain O'Donovan was concerned about retaliation against plaintiff by prison staff so he placed plaintiff in TLU status on October 12, 2006, "pending an investigation into protective custody." (Complaint at 9). Plaintiff wrote to WCI Warden Phil Kingston on October 15, 2006, and asked that he be removed from TLU and placed back in the prison's general population. Plaintiff also requested a prison job paying a rate similar to his tier tender job and a single cell. Plaintiff repeated this request to WCI Security Director Don Strahota on October 16, 2006. WCI staff started the process to have plaintiff transferred

4

to Columbia Correctional Institution (CCI) "due to security concerns," and the decision was made on October 18, 2006, to transfer plaintiff to CCI. (Complaint at 9-10).

## II. DISCUSSION

Plaintiff submits that each of the defendants retaliated against him in violation of his constitutional rights under the First Amendment. A prisoner's retaliation claim is subject to a liberal notice pleading standard; to comply with 1915A, as with Fed. R. Civ. P. 12(b)(6), the complaint need specify only the bare minimum facts necessary to notify defendants and the court of the nature of the claims. See Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). The "bare minimum" in a retaliation claim are the facts that would apprise defendants of what plaintiff did to provoke the alleged retaliation and what they did in response. See Higgs, 286 F.3d at 439; Walker v. Thompson, 288 F.3d 1005, 1012 (7th Cir. 2002) ("a plaintiff alleging retaliation must reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting the retaliatory conduct"). In this case, plaintiff has provided details about the inmate complaints and grievances he filed, as well as defendants' actions that plaintiff submits were retaliatory. Plaintiff may proceed on First Amendment retaliation claims against defendants Bradley, Mierzejewski and Immerfall.

Therefore,

**IT IS ORDERED** that pursuant to an informal service agreement between the Attorney General and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the state defendants.

**IT IS ALSO ORDERED** that defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and legal material to:

>Honorable Lynn Adelman
>% Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 14th day of April, 2011.

/s  
LYNN ADELMAN  
District Judge